UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DOUGLAS EARL MEYER,

    Plaintiff,

    v.

MICHAEL WILSON, DAN
MCCARY, *et al.*,

    Defendants.

No. CV-11-5138-RHW

**ORDER DENYING, IN
PART, AND GRANTING,
IN PART, DEFENDANTS'
MOTION TO DISMISS**

Before the Court are Defendants' Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) For Failure to State a Claim Upon Which Relief Can Be Granted (ECF Nos. 11 and 17). The motion was heard without oral argument.

In his First Amended Complaint, Plaintiff asserts that his Constitutional rights were violated by (1) illegal police public disclosure; (2) illegal search and seizure (3) illegal incarceration, and (4) conspiracy to violate his constitutional rights and deny him his right to seek legal redress.

**Background Facts**

The following background facts were taken from Plaintiff's complaint:[1]

Defendant Wilson stopped by Plaintiff's residence on October 13, 2009. He was attempting to contact Plaintiff to talk to him about his failure to register as a sex offender in Benton County, Washington. Finding no one at home, he left a

---

[1]For purposes of a 12(b)(6) motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the Plaintiff.

**ORDER DENYING, IN PART, AND GRANTING, IN PART,
DEFENDANTS' MOTION TO DISMISS ~ 1**

business card on Plaintiff's door and then went to Plaintiff's neighbor's home, hoping to get a positive identification of Plaintiff by showing the neighbor a photograph of Plaintiff.  No one was home at the neighbor's house.  He then ran a license plate check on the motor home parked in the neighbor's driveway and discovered that it belonged to Ms. Osha Roberts.

He was able to locate the phone number of Ms. Roberts and left a message on her answering machine.  The next day, Ms. Roberts called him back and verified that Plaintiff was her neighbor.  Defendant Wilson then told Ms. Roberts that Plaintiff was a Level I sex offender.

On October 15, 2009, Defendant Wilson spoke with Plaintiff, who informed Wilson that he was scheduled for an MRI on October 20, 2009.  Plaintiff asked if Wilson could wait to arrest him until after the appointment.  In spite of this, Defendant Wilson, along with Officer Knox and Deputy Juarez, went to Plaintiff's home on that day–October 20, 2009.

Ms. Rose, Plaintiff's roommate, answered the door.  She was feeling ill that day.  In obtaining consent to search the home, Wilson "intentionally bullied" Ms. Rose. He also failed to give Ms. Rose any warning that she could decline the search. During the search, the officers observed a single shot 20 gauge shotgun and a rifle in a closet.  Upon leaving, Wilson informed Ms. Rose that there should not be any guns on the property because Plaintiff was a felon.

Defendant Wilson then contacted Benton County Prosecutors, and he was advised to obtain a search warrant for the firearms and to arrest Plaintiff for being a "Felon in Possession of a Firearm."  The warrant was obtained on October 21, 2009.

Defendant Wilson, along with Sgt. Welch, Defendant Dan McCary, Det. Clark, and Deputy Surpluss executed the warrant on October 22, 2009.  Defendant Wilson arrested Plaintiff for failing to register as a sex offender and looked for the firearms.  Ms. Rose told him that the guns had been taken by her son Michael to

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS ~ 2**

her mom's house because Wilson told her that the guns could not be in the house. Defendant Wilson then went to Ms. Rose's parents house and confiscated the guns.

Plaintiff spent 14 days in the Benton County Jail. On October 27, 2009, he was charged with Failure to Register as a Sex Offender, and Unlawful Possession of Firearms. He was released on November 5, 2009, after which time he submitted a Public Disclosure Request to the Benton County Sheriff. He asked for copies of any internal policies and procedures related to the disclosure of Level I sex offender status to the public. In response, the Sheriff's officer provided copies of Wash. Rev. Code 4.25.550.

On November 30, 2009, Plaintiff moved to suppress the evidence of the weapons, and in response, the State dismissed Count II, Unlawful Possession of a Firearm.

On March 25, 2011, Plaintiff filed a Citizens Complaint with the Benton County Sheriff regarding Defendant Wilson's actions occurring on October 20, 2009. He personally delivered it to Defendant McCary, who stated that he would investigate the matter and would inform Plaintiff of the results.

Plaintiff also sought to have the firearms returned to him. On April 5, 2011, Plaintiff filed a "Motion for Return of Property." Plaintiff has yet to have this motion heard, or have the firearms returned to him.

On September 28, 2011, Plaintiff met with Defendant McCary in order to inquire as to the status of his Citizen Complaint. Defendant McCary stated that he would not conduct an investigation into Wilson's actions because Wilson had the authorization to disclose the information to Plaintiff's neighbor. He also refused to disclose any written findings or conclusions that led to his decision not to investigate.

Plaintiff filed his complaint on October 3, 2011, and his First Amended Complaint on April 30, 2012. Defendants now move to dismiss his claims

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS ~ 3**

1  pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief

2  may be granted.

3  **ANALYSIS**

4  **A.    Motion Standard**

5        To survive a Rule 12(b)(6) motion to dismiss, the Plaintiff must allege

6  "sufficient factual matter, accepted as true, to state a claim to relief that is

7  plausible on its face." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721

8  (9th Cir. 2011), *citing Ashcroft v. Iqbal,* 556 U.S. 662, 669 (2009). A claim is

9  facially plausible if the Plaintiff pleads "factual content that allows the court to

10 draw the reasonable inference that the defendant is liable for the misconduct

11 alleged." *Id.* The Court must accept all facts alleged in the complaint as true, and

12 make all inferences in the light most favorable to the Plaintiff, the nonmoving

13 party. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1098 (9th Cir. 2009).  Dismissal is

14 appropriate only if "it appears beyond doubt" that the nonmoving party "can prove

15 no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

16 *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).

17       "A § 1983 claim requires two essential elements: (1) the conduct that harms

18 the plaintiff must be committed under color of state law (i.e., state action), and (2)

19 the conduct must deprive the plaintiff of a constitutional right." *Ketchum v.*

20 *County of Alameda*, 811 F.2d 1243, 1245 (9th Cir.1987).

21       Defendants argue that Plaintiff has not alleged facts, which if believed,

22 would show that his Constitutional rights were violated.

23 **B.    Plaintiff's Claims**

24       Plaintiff brings four claims: (1) violation of his substantive individual

25 liberty interests and procedural due process right under the Fourteenth

26 Amendment as a result of the disclosure of his Level I sex offender status to his

27 neighbor; (2) violation of his right to be free from unlawful search and seizure; (3)

28 violation of his due process rights when he was arrested for unlawful possession

**ORDER DENYING, IN PART, AND GRANTING, IN PART,
DEFENDANTS' MOTION TO DISMISS ~ 4**

of a firearm was without probable cause; and (4) violation of 42 U.S.C. § 1985 as a result of the refusal of Defendant McCary to investigate the actions of Defendant Wilson.

**1.    Disclosure of Level I Status to Neighbor  - Violation of Due Process**

In his First Amended Complaint, Plaintiff asserts that his substantive individual liberty interests and procedural due process rights were violated when Defendant Wilson told his neighbor that he was a Level I sex offender.  Notably, Plaintiff is not alleging that the sex offender notification statute is unconstitutional; rather, he is alleging that his constitutional rights were violated because the sex offender notification statute was violated.

Plaintiff alleges that Defendant Wilson voluntarily proffered that he was a sex offender without any request from Ms. Roberts, and that there was no evidence that he was a danger or that it was necessary for the public's protection that this information be disseminated.

Wash. Rev. Code 4.24.550(3) provides guidelines for the local law enforcement agencies to consider in determining the extent of a public disclosure made under this statute. Specifically, for persons classified as Level I, local law enforcement agencies, may, upon request, disclose relevant, accurate, and necessary information to any victim or witness, or any individual community member who lives near where the offender resides, will reside, or is regularly found.  Wash. Rev. Code 4.24.550(3)(a)[2]; *see also In Re Meyer*, 142 Wash.2d 608,

---

[2](3) Except for the information specifically required under subsection (5) of this section, local law enforcement agencies shall consider the following guidelines in determining the extent of a public disclosure made under this section: (a) For offenders classified as risk level I, the agency shall share information with other appropriate law enforcement agencies and, if the offender is a student, the public or private school regulated under Title 28A RCW or chapter 72.40 RCW which the offender is attending, or planning to attend. The agency may disclose, upon request, relevant, necessary, and accurate information to any victim or witness to the offense and to any individual community member who lives near the residence where the offender resides, expects to reside, or is

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS ~ 5**

614 (2001).

Additionally, subsection (5)(a)(ii) provides that when a level I registered sex offender is out of compliance with the registration requirements, law enforcement is authorized to post the sex offender's information, including name, relevant criminal convictions, address by hundred block physical description and photograph on a website, as long as it is permissible under state and federal law.

In his complaint, Plaintiff allege facts that indicate that he was out of compliance with the registration requirements. Thus, subsection 5 was applicable at the time Defendant Wilson shared his sex offender status with Ms. Roberts.

Moreover, regardless of whether Defendant Wilson violated this statute when he disclosed Plaintiff's status, the Court finds that this does not rise to the level of a constitutional violation. State law creates a liberty right that the Due Process Clause will protect "only if the state law contains (1) substantive predicates governing official decisionmaking; and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." *Marsh,* at 1156 (9th Cir. 2012). "Laws that dictate particular decisions given particular facts can create a liberty interests, but laws granting a significant degree of discretion cannot." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1980)

The sex offender disclosure statute does not meet these two requirements. First, subsection (3) provides *guidelines* in determining the extent of public disclosure, not specific directives. Second, subsection (7) specifically indicates that risk level classifications decision and release of information decisions are discretionary.[3]

---

regularly found.

[3]Subsection 7 provides:
An appointed or elected public official, public employee, or public agency as defined in RCW 4.24.470, or units of local government and its employees, as

**ORDER DENYING, IN PART, AND GRANTING, IN PART,
DEFENDANTS' MOTION TO DISMISS ~ 6**

1   As a matter of law, then, Plaintiff cannot assert a facially plausible claim for

2   a violation of his due process rights under this set of facts. As such, Plaintiff's

3   claim for violation of his substantive and procedure due process rights for illegal

4   police public disclosure is dismissed with prejudice.

5   **2.   Violation of Right to be Free from Unreasonable Search and**

6   **Seizure**

7   The Fourth Amendment protects against unreasonable searches and

8   seizures. "Searches and seizures inside a home without a warrant are

9   presumptively unreasonable." *Payton v. New York*, 455 U.S. 573, 5876 (1980).

10  "Nowhere is the protective force of the fourth amendment more powerful than it is

11  when the sanctity of the home is involved." *Los Angeles Police Protective League*

12  *v. Gates*, 907 F.2d 879, 884 (9th 1990).

13  A warrantless search does not violate the Fourth Amendment if the officers

14  obtained consent to search the residence. *Liberal v. Estrada*, 632 F.3d 1064, 1082

15  (9th Cir. 2011). Such consent may "not be coerced, by explicit or implicit means,

16  by implied threat or covert force." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228

17  (1973). Whether consent to search was voluntary or the product of duress or

18  coercion is to be determined from the totality of all the circumstances. *Id.* at 277.

19  The factors to be considered in determining whether consent to a search was

20  voluntary include: "(1) whether defendant was in custody; (2) whether the

21  arresting officers had their guns drawn; (3) whether Miranda warnings were given;

22  (4) whether the defendant was notified that she had a right not to consent; and (5)

23  whether the defendant had been told a search warrant could be obtained." *Liberal*,

24  632 F.3d at 1082. Where police demand entrance to a dwelling, "compliance with

26  provided in RCW 36.28A.010, are immune from civil liability for damages for any
    discretionary risk level classification decisions or release of relevant and necessary
27  information, unless it is shown that the official, employee, or agency acted with
    gross negligence or in bad faith. The immunity in this section applies to risk level
28  classification decisions and the release of relevant and necessary information
    regarding any individual for whom disclosure is authorized.

**ORDER DENYING, IN PART, AND GRANTING, IN PART,**
**DEFENDANTS' MOTION TO DISMISS ~ 7**

a [governmental] demand is not consent." *United States v. Winsor*, 846 F.2d 1569, 1573 n.3 (9th Cir. 1988); *see also Florida v. Bostick*, 501 U.S. 429, 438 (1991) ((" 'Consent' ' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse").

In his complaint, Plaintiff asserts that Defendant Wilson "intentionally bullied" Ms. Rose into giving her consent to search the house. Additionally, he alleges that Ms. Rose was not notified that she had a right not to consent, a factor the factfinder must consider in determining whether the consent was voluntary. As such, he states a claim for unreasonable search.

### 3.    Unlawful Arrest and Unlawful Detention

Plaintiff asserts that his arrest for Unlawful Possession of a Firearm was without probable cause because Defendant Wilson violated his Fourth Amendment rights when he entered his house on October 20, 2009.  Plaintiff also alleges that he was unlawfully detained after he was arrested in violation of the Fourteenth Amendment

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)(citations omitted).

Generally, the mere detention pursuant to a valid warrant does not violate due process, although an individual's mistaken incarceration after a lapse of a certain amount of time may give rise to a claim under the Fourteenth Amendment. *Baker v. McCollan*, 443 U.S. 137, 144, (1979); *Lee v. City of Los Angeles*, 250 F.3d 668, 684 (2001). In *Baker*, the plaintiff sued a sheriff for wrongful detention in the county jail caused by the failure to institute adequate identification procedures, which caused him to be jailed for three days. *Baker*, 443 U.S. at 144. The Court held the detention was not an actionable due process violation because

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS ~ 8**

1   the detention was pursuant to a valid warrant and was not unduly long. *Id.* at 144-

2   45. Specifically, the Supreme Court stated:

3           Given the requirements that arrest be made only on probable
        cause and one detained be accorded a speedy trial, we do not think a
4       sheriff executing an arrest warrant is required by the Constitutional to
        investigate independently every claim of innocence, whether the
5       claim is based on mistaken identity or a defense such as lack of
        requisite intent. Nor is the official charged with maintaining custody
6       of the accused named in the warrant required by the Constitution to
        perform an error-free investigation of such a claim.
7   *Id.* at 145-46.

8           According to the facts as alleged in the Complaint, at the time of

9   Defendant's arrest, there was probable cause that he had committed two crimes:

10  (1) failure to register; and (2) felon in possession of a firearm. The fact that the

11  evidence that may ultimately be found to have been obtained illegally does not

12  negate that probable cause existed at the time of his arrest and detention. As such,

13  Plaintiff has failed to allege a facially plausible claim for false arrest and false

14  imprisonment.

15      **4.   Conspiracy - 42 U.S.C. § 1985(3)**

16          Plaintiff asserts that Defendant Wilson and Defendant McCary conspired to

17  violate his civil rights.

18          To state a claim for conspiracy to violate constitutional rights, the Plaintiff

19  must allege the existence of an express or implied agreement among the defendant

20  officers to deprive him of his constitutional rights, and an actual deprivation of

21  those rights resulting from that agreement. *Ting v. United States*, 927 F.2d 1504,

22  1513 (9th Cir. 1991). To survive summary dismissal of the complaint, "the plaintiff

23  must state specific facts to support the existence of the claimed conspiracy."

24  *Olsen v. Idaho State Bd. Of Med.*, 363 F.3d 916, 929 (9th Cir. 2004).

25          Here, the complaint merely alleges that both Defendants participated in the

26  search and seizure of Defendant, and then Defendant McCary failed to investigate

27  Plaintiff's complaints. Plaintiff has not alleged the existence of an express or

28  implied agreement between the two Defendants. Plaintiff's conspiracy claim is

**ORDER DENYING, IN PART, AND GRANTING, IN PART,
DEFENDANTS' MOTION TO DISMISS ~ 9**

1   dismissed with leave to amend.

2       Accordingly, **IT IS HEREBY ORDERED:**

3       1.  Defendants' Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) For

4   Failure to State a Claim Upon Which Relief Can Be Granted (ECF Nos. 11 and

5   17) are **DENIED, in part** and **GRANTED, in part**.

6       2.  A telephonic scheduling conference is **set** for **September 17, 2012**, at

7   9:30 a.m. The parties are directed to call the Court's conference line, (509) 458-

8   6382, at the appropriate time. The Court will issue a notice instructing the parties

9   to file a joint status certificate prior to the hearing.

10      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

11  this Order and forward copies to the Plaintiff and counsel.

12      **DATED** this 21st day of August, 2012.

14      *s/Robert H. Whaley*

15  ROBERT H. WHALEY
United States District Judge

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS ~ 10**