UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DOUGLAS EARL MEYER,

    Plaintiff,

    v.

MICHAEL WILSON,

    Defendant.

No.  CV-11-5138-RHW

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Michael Wilson's Motion for Summary Judgment, ECF No. 54, heard without oral argument. Plaintiff Douglas Earl Meyer ("Plaintiff" or "Mr. Meyer"), who is proceeding *pro se*, has responded, ECF No. 75. Defendant Wilson ("Defendant" or "Detective Wilson") has replied, ECF No. 78. Defendant is represented by Ryan J. Lukson of the Benton County Prosecutor's Office. The Court is now fully informed, having reviewed all documents filed in support of, and in opposition to, each motion. For the reasons set forth below, the Court **grants** Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

This § 1983 civil rights action arises out of an alleged illegal search that occurred on October 20, 2009. On that date, Defendant, a detective with the Benton County Sheriff's Office, came to Plaintiff's home to discuss his failure to register as a sex offender.[1]

---

[1] Plaintiff was convicted of Second Degree Rape in Grant County in 1994. Wilson Decl., ECF No. 56 at 9.

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 1

Prior to the search, Detective Wilson received a call from Grant County Sex Offender Registration Detective Jay Atwood, who inquired whether Benton County was monitoring Plaintiff. Consequently, Detective Wilson commenced an investigation and learned that Mr. Meyer had not registered with Benton County, although he resided in Kennewick, Washington. Through the course of his investigation, Detective Wilson contacted Plaintiff's neighbor and verified Plaintiff's address. On October 15, 2009, Plaintiff contacted Detective Wilson. Plaintiff informed Detective Wilson that as a result of a back injury, he was scheduled to have surgery. Plaintiff also requested that Defendant hold off on arresting him until after the surgery. Detective Wilson then informed Mr. Meyer that he needed to register with Benton County as soon as possible.

On October 20, 2009, Detective Wilson learned that Plaintiff had not contacted his office regarding his intentions to register. As a result, Detective Wilson, Officer Knox and Deputy Juarez went to Mr. Meyer's residence to arrest him for failure to register as a sex offender.

Although Plaintiff was not at home, a female answered the door. The parties dispute whether she then identified herself as Plaintiff's "roommate" or "significant other." The female in question was later identified as Tammy Lee Rose. Ms. Rose then informed Detective Wilson that Plaintiff was at Kadlec Medical Center getting an MRI. Detective Wilson then asked Ms. Rose for permission to search the home to ensure that Plaintiff was not hiding. Ms. Rose told Detective Wilson that he was not hiding and that she was feeling ill. Ms. Rose stated that she didn't want Detective Wilson to get sick. According to Ms. Rose, Defendant replied that he would take his chances. In her Declaration, Ms. Rose also states that she felt "overwhelmed and intimidated."

After several exchanges, Ms. Rose then told Detective Wilson he could "come in and look for himself" to confirm that Plaintiff was not hiding. Detective

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 2

1  Wilson did not inform Ms. Rose that she had the right to refuse her consent to his
2  request to search Plaintiff's home.

3          Upon gaining Ms. Rose's consent, Detective Wilson discovered several
4  firearms in plain view, which he located in the closet of the master bed room.
5  Detective Wilson asked Ms. Rose who the firearms belonged to. Ms. Rose stated
6  that she did not know. Detective Wilson told Ms. Rose that Plaintiff was a felon
7  and not allowed to possess any weapons. Subsequently, the firearms were removed
8  to Ms. Rose's parent's home by her son.

9          Detective Wilson then sought a search warrant for the firearms discovered
10  during the warrantless search of Plaintiff's home from the Benton County
11  Prosecutor's Office. On October 21, 2009, Benton County Superior Court Judge
12  Robert Swisher granted and signed the warrant. Detective Wilson then served the
13  warrant on October 22, 2009. Ultimately, Detective Wilson arrested Plaintiff for
14  Failure to Register as a Sex Offender, and Unlawful Possession of Firearms.
15  Detective Wilson also secured the removal of the firearms from Ms. Rose's
16  parent's home.

17                          **PROCEDURAL BACKGROUND**

18          On October 3, 2011, Plaintiff filed the present action against Defendants
19  Michael Wilson and Dan McCary. ECF Nos. 1, 4. Plaintiff asserted that his
20  Constitutional rights were violated by (1) illegal police public disclosure; (2)
21  illegal search and seizure (3) illegal incarceration, and (4) conspiracy to violate his
22  constitutional rights and deny him his right to seek legal redress. *Id.*

23          On August 21, 2012, the Court granted, in part, Defendant's Motion to
24  Dismiss. *See* ECF No. 25. The Court found Count Two stated a claim for illegal
25  search and seizure, but Counts One, Three, and Four failed to state a claim, and
26  were dismissed. In his Third Amended Complaint, ECF No. 31, filed on September
27  26, 2012, Plaintiff amended the conspiracy claim alleged in the prior complaint, as

28

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR
SUMMARY JUDGMENT** * 3

permitted by the Court. On January 17, 2013, however, the Court granted Defendant's motion to dismiss this claim as well, and dismissed Defendant McCary. ECF No. 48. On December 19, 2012, Plaintiff moved the court for summary judgment on his second claim, for unreasonable search and seizure, and to strike Defendant's Answer to the Third Amended Complaint. *See* ECF No. 36. Thereafter, on February 12, 2013, the Court denied Plaintiff's motions, questioning whether Plaintiff's evidence was sufficient to meet the moving party's initial burden to present an absence of material fact. ECF No. 53. The Court also found that genuine issues of material fact remained regarding Ms. Rose's consent, as her declaration in this matter had yet to be filed. *Id.*

On February 12, 2013, Detective Wilson filed his Motion for Summary Judgment. ECF No. 54. The Court also granted Plaintiff's Motion for Extension of Time and allowed him to submit a supporting Declaration of Tammy Lee Rose, by Order dated March 12, 2013. ECF No. 64. Finally, the Court granted Defendant's Motion for Leave to Depose Tammy Lee Rose and to Compel Disclosure. ECF No. 72.

## I.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, the non-moving party

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 4

must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). The non-moving party must present more than a scintilla of evidence in their favor to survive summary judgment. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B.    Fourth Amendment – Unlawful Search and Seizure**

The Fourth Amendment generally prohibits warrantless entry of a person's home, whether to make an arrest or to conduct a search, unless an exception to the warrant requirement, such as consent, emergency or exigency, applies. *Espinosa v. City and Cnty. of San Francisco,* 598 F.3d 528, 533 (9th Cir. 2010). Thus, The Fourth Amendment's warrant requirement does not apply to an officer's entry into a person's home in situations in which voluntary consent has been obtained from the individual whose property is searched, *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973), or "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171 (1974).

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 5

In determining whether consent was given in a particular case, the Court must consider the totality of the circumstances. *See Schneckloth v. Bustamonte,* 412 U.S. at 225-26; *United States v. Garcia,* 997 F.2d 1273, 1281-82 (9th Cir. 1993). The factors to be considered in determining whether consent to search was voluntary, or the produce of duress or coercion include:  "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *Liberal v. Estrada*, 632 F.3d 1064, 1082 (9th Cir. 2011) (internal citation omitted). The Ninth Circuit has also recognized that "every encounter has its own facts and its own dynamics," and "[s]o does every consent." *United States v. Morning,* 64 F.3d 531, 533 (9th Cir. 1995).

In a criminal case, the government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. *See United States v. Rosi,* 27 F.3d 409, 412 (9th Cir. 1994). In a civil case under 42 U.S.C. § 1983, however, the plaintiff carries the ultimate burden of establishing each element of his or her claim, including lack of consent. *Larez v. Holcomb,* 16 F.3d 1513, 1517 (9th Cir. 1994); *accord Valance v. Wisel,* 110 F.3d 1269 (7th Cir.1997).

## II.    DISCUSSION

**A.    Detective Wilson is entitled to Qualified Immunity on Plaintiff's Section 1983 Claim for Violation of Fourth Amendment – Illegal Search and Seizure**

Defendant argues that he is entitled to qualified immunity, as his search into Plaintiff's home on October 20, 2009, was lawful and based on Ms. Rose's consent. ECF No. 54 at 5. He contends that Plaintiff's only evidence, the Declaration of Ms. Rose, "presents no specific facts that could lead [the] court to believe that a reasonable officer would not have understood her consent to be

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 6

voluntary." ECF No. 78 at 2. In addition, Defendant asserts that "an officer's failure to inform an individual of her right to refuse consent to a search does not necessarily render her consent to such a search coerced." *Lopera v. Town of Coventry*, 640 F.3d 388, 399 (1st Cir. 2011) (citing *Ohio v. Robinette*, 519, U.S. 33, 39-40 (1996)). Defendant has submitted the Declaration of Michael Wilson, ECF No. 56, and the Declaration of Ryan Lukson, ECF No. 57, in support of his Motion for Summary Judgment.

Plaintiff responds that Defendant knew, prior to going to Plaintiff's home on October 20, 2009, that Plaintiff would not be at home. ECF No. 75. As such, Plaintiff argues that Detective Wilson knew his actions were illegal, and is not entitled to qualified immunity. ECF No. 75. Plaintiff also argues that a genuine issue of material fact exists because Defendant "intentionally bullied" Ms. Rose, who was not feeling well on the date of their encounter, into giving her consent. *Id.* at 2-3. As evidence, Plaintiff submits the Declaration of Tammy Lee Rose, ECF No. 75 at Ex. A, in opposition to Defendant's Motion for Summary Judgment.

The defense of qualified immunity protects a § 1983 defendant "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). A court considering a claim of qualified immunity must determine: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan,* 555 U.S. 223 (2009). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* Granting summary judgment on the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 7

reasonable officer could not have believed his conduct was lawful." *Schwenk v. Hartford,* 204 F.3d 1187, 1196 (9th Cir. 2000).

As a preliminary matter, Plaintiff argues that Ms. Rose identified herself as his "roommate," not as his "significant other" as reported by Detective Wilson. ECF No. 2-3. As such, he argues she did not have the authority to consent to the search of Plaintiff's home. Plaintiff cites no authority for the proposition that a "roommate," with common authority and living in Plaintiff's home, does not possess the authority to consent to a search.

A third party's common authority rests on his or her "mutual use of the property [and] joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n. 7 (alterations added). "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Davis,* 332 F.3d 1163, 1170 (9th Cir. 2003). The "determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Illinois v. Rodriguez,* 497 U.S. 177, 188 (1990).

Here, Plaintiff admits that Ms. Rose was his former roommate and living in his house on October 20, 2009. ECF No. 75 at 3, and Ex. A at ¶ 1. Therefore, a reasonable officer could believe that she had the authority to consent to the search in question, regardless of whether she identified herself as a "roommate" or "significant other." This issue does not prevent the Court from granting summary judgment in favor of Defendant.

The Court now addresses the issue of whether Defendant voluntarily obtained the consent of Ms. Rose. For the reasons that follow, the Court agrees with Defendant and finds that Detective Wilson is entitled to qualified immunity,

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 8

as he did not violate Plaintiffs clearly established constitutional Fourth Amendment rights to be free from illegal search and seizure.

Viewing the evidence in the light most favorable to Plaintiff, the Declaration of Tammy Lee Rose reveals that upon opening the door on October 20, 2009, she identified herself as Plaintiff's roommate and told Defendant that Plaintiff was not at home. *Id.* at ¶ 17. She stated that Defendant "wanted to come in and look for [Plaintiff]" to ensure he was not hiding. *Id.* at ¶ 18-19. Ms. Rose then told Defendant that she was sick. *Id.* at ¶ 20. Detective Wilson replied "that he would take his chances and again, told [Ms. Rose] he wanted to come in and look for [Plaintiff]. *Id.* at ¶ 21. Ms. Rose stated that she "felt overwhelmed and intimidated and told [Defendant] that he could come in and look for himself." *Id.* at ¶ 22. Ms. Rose also declared that Detective Wilson was rude, loud, and belligerent. *Id.* ¶ 15.

Here, the undisputed evidence demonstrates that Ms. Rose's consent was neither coerced, nor given involuntarily. Assessing the factors set out by the Ninth Circuit, she was not in custody and there was no show of authority or use of force by Defendant. *See also United States v. Drayton*, 536 U.S. 194, 204 (2002) (holding defendant's consent was not a product of coercion where there was "no indication that he was required to consent [and] no application of force, no intimidating movement . . . no blocking of exits, no threat, no command, not even an authoritative tone of voice.")  Further, Ms. Rose was not in custody, and Defendant did not state that a search warrant could be obtained.

However, as set forth *supra*, Defendant failed to inform Ms. Rose of her right to refuse consent to search. This factor, taken alone, is not sufficient to render Ms. Rose's consent involuntary. *See Robinette*, 519 U.S. at 39-40. Thus, the only factors weighing against voluntarily consent for the Court to consider are Ms. Rose's subjective feelings of being ill and intimidated.

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 9

Defendant, relying on *Lopera*, points out that although a consenting party "may have subjectively felt coerced by the police . . . to give his consent, that is not the focus of the qualified immunity." 640 F.3d at 400-01. The Court's focus then is on the viewpoint of whether an objectively reasonable officer could have concluded that Ms. Rose's consent was voluntarily. *Id.* In this case, a jury might find that Ms. Rose subjectively felt "intimidated" and that her consent was coerced. However as stated above, that is not the relevant inquiry. The Court cannot say that no reasonably competent officer would have concluded that Ms. Rose's consent was valid under clearly established Supreme Court Case law. The Court concludes that based on the totality of circumstances, the Declaration of Ms. Rose does not create a genuine issue of material fact that her consent was involuntary or coerced. Accordingly, Detective Wilson is entitled to qualified immunity, as he did not violate Plaintiff's constitutional right under clearly established law during the search conducted on October 20, 2009. Defendant's motion for summary judgment is granted as to Plaintiff's Fourth Amendment claim against Detective Wilson in his "individual capacity."

**B.    Defendant's Seizure of the Firearms did not Violate Plaintiff's Fourth Amendment Rights**

Defendant next asserts that Plaintiff lacks standing to challenge the seizure of the firearms from Ms. Rose's parent's home. ECF No. 54 at 11. Specifically, Defendant argues that the weapons in question did not belong to Plaintiff. *Id.* Defendant concludes that Plaintiff lacked standing to sue for firearms that he neither owned, nor were seized from his home. *Id.*

Plaintiff is unable to cite any case law to support his position that he has standing to sue for the firearms in question.

Section 1983 provides a private right of action only to those who allege that they have been deprived of rights, privileges or immunities secured by the

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 10

Constitution or laws of the United States. *Parrat v. Taylor,* 451 U.S. 527, 535 (1981). In addition, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174 (1969). Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Smith v. City of Fontana,* 818 F.2d 1411, 1417 (9th Cir. 1987).

Here, the evidence demonstrates that the weapons in question did not belong to Plaintiff. *See* Lukson Decl., ECF No. 57, Ex. A at 7. Furthermore, the weapons were not seized from Plaintiff's home. Rose Decl., ECF No. 75. Ex. A at ¶ 28-29. After Defendant's initial search, the weapons were transported to Ms. Rose's parent's home by her son -- where they were later seized by Defendant pursuant to a warrant. *Id.* Thus, Plaintiff has not established a violation of his personal Fourth Amendment rights and summary judgment is granted as to his unlawful seizure claim.

**C.    Benton County is Entitled to Summary Judgment on Plaintiff's Claim Against Defendant in his Official Capacity**

Plaintiff's Third Amended Complaint alleges that Defendant is being "sued in both [h]is individual and official capacities." *See* ECF No. 31 at ¶ 5. Defendant asks the Court to grant summary judgment, as Plaintiff has failed to plead the constitutional deprivation alleged was a product or policy of Benton County. ECF No. 54 at 12-13. As such, Defendant argues that Plaintiff has failed to allege anything more than *respondeat superior* liability on behalf of the County, which is not a cognizable claim under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).

The Court agrees with Defendant that a county may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *See*, e.g., *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). Plaintiffs

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 11

who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691. Further, other than the allegation that Plaintiff is suing Defendant in his "official capacity," Plaintiff submits no evidence that the constitutional deprivation alleged was in any way connected with an official policy or practice or custom of Benton County. Thus, the Court grants summary judgment to Benton County on Plaintiff's claim against Defendant in his "official capacity."

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant Wilson's Motion for Summary Judgment, ECF No. 54, is **GRANTED.**

2.  All pending hearings and deadlines are **stricken**.

3.  All pending motions are **denied**, as moot, including Plaintiff's Motions for Extension of Time and to Expedite, ECF Nos. 79, and 81.

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and Plaintiff, and **close the file**.

**DATED** this 24th day of May, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT** * 12

q:\rhw\acivil\2011\meyer\order grant def msj.docx